793 F.2d 1292
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EARL MURRY, Plaintiff-Appellant,
v.
CITY OF COLUMBUS; CIVIL SERVICE COMMISSION OF COLUMBUS; DANA
G. RINEHART; DANIEL D. CONNOR; JULIA JOHNSON;
PATRICK H. POWERS; DONALD E. BARNES;
MARGUERITE M. NEAL,
Defendants-Appellees.
 85-3438
 United States Court of Appeals, Sixth Circuit.
 5/8/86
 
 AFFIRMED
 S.D.Ohio
 On Appeal from the United States District Court for the Southern District of Ohio
 Before: ENGEL, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal involves a dispute over the existence and enforceability of a settlement agreement in a lawsuit alleging improper discharge of plaintiff-appellant from his position as Executive Director (Secretary) of the Columbus, Ohio, Civil Service Commission. Defendants-appellees claimed below that plaintiff's attorney, Perry Silverman, acting on behalf of plaintiff, entered into a settlement agreement with defendants' attorney, Curtis F. Gantz, on November 7, 1984, and that the agreement provided, in part, that the case would be dismissed with prejudice. Plaintiff asserts that: (1) no agreement was reached on November 7 or at any time thereafter; (2) Silverman was not plaintiff's attorney at the time of the alleged agreement (i.e., on November 7) and thus could not have had authority to enter into the agreement; and (3) even assuming Silverman was plaintiff's attorney at the time of the alleged agreement, plaintiff did not give Silverman authority to enter into the agreement. The District Judge, John D. Holschuh, United States District Court for the Southern District of Ohio, found that Silverman and Gantz did come to an agreement on the terms for settling the suit on November 7, that Silverman was still plaintiff's attorney at that time, and that plaintiff had explicitly authorized Silverman to settle the case on the terms agreed to by Silverman and Gantz on November 7. We hold that these findings were not clearly erroneous and affirm the District Court.
 
 
 2
 The standard of review in this case is whether the District Court was clearly erroneous, Fed. R. Civ. P. 52(a), because plaintiff is merely challenging the court's factual findings. The evidence in this case consists of several letters written by Silverman and plaintiff, and the oral testimony of a handful of witnesses. Because plaintiff's and Silverman's testimony is at odds at certain critical points, the court's decision turned largely on an evaluation of the witnesses' credibility. Thus we approach our task mindful of the rule that, 'due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Fed. R. Civ. P. 52(a).
 
 
 3
 Silverman filed plaintiff's suit on July 9, 1984. Plaintiff and Silverman agree that by early October, much of the discovery in the case had been completed, the parties' settlement offers were still far apart, and plaintiff and Silverman were not seeing eye-to-eye on how to handle the case. Defendants had made a final offer of $15,000. Silverman urged plaintiff to accept it, but plaintiff declined to do so.[1] Silverman claims that on November 7 he again encouraged plaintiff to accept the offer and that plaintiff authorized acceptance if certain conditions were satisfied. Silverman states that later that day he called Gantz and entered into a settlement agreement, on behalf of plaintiff, which satisfied plaintiff's demands.
 
 
 4
 The first issue is whether Silverman was authorized to act as plaintiff's counsel on November 7. Plaintiff and Silverman agree that they had a heated telephone conversation on or about the evening of November 1, 1984. Silverman wrote a letter on November 2, 1984, (Defendants' Exhibit 5), indicating that it was his understanding that plaintiff wanted him (Silverman) to withdraw as counsel and that Silverman intended to file a motion for leave to withdraw with the District Court. The letter reviewed additional reasons why Silverman felt he could not continue as effective counsel (e.g., serious differences between the two regarding the case) and summarized attorney's fees and expenses that plaintiff owed.
 
 
 5
 Silverman and plaintiff agree that they talked on November 5, but their versions of the conversation are diametrically opposed. Plaintiff claims he told Silverman he agreed with Silverman's conclusion that Silverman should no longer be plaintiff's attorney. Plaintiff says he then started seeking out a replacement for Silverman. He also claims that Silverman kept harassing him to settle the case for $15,000. Silverman claims that during the November 5 conversation, plaintiff insisted that Silverman remain plaintiff's counsel and that plaintiff threatened to seek disciplinary action against Silverman if he did withdraw. The District Court believed Silverman and specifically noted that plaintiff's testimony on this point was credible. (District Court Finding #12). One witness testified that on November 6 plaintiff told her Silverman was still his counsel, and Robert Weaver, plaintiff's attorney on his unemployment compensation claim, testified that plaintiff told him he discharged Silverman after November 8. Accordingly, the District Court's finding is not clearly erroneous.
 
 
 6
 The next issue is whether Silverman had authority to enter into the agreement allegedly reached on November 7. Silverman testified that when he spoke with plaintiff on the morning of November 7, plaintiff gave him express authorization to accept the $15,000 offer if three conditions were met: (1) Silverman would reduce his fees to $5,000, so that plaintiff would net $10,000; (2) the $15,000 would be designated as compensation for humiliation and similar damages so that it would not be subject to federal, state or city income tax withholding; and (3) the settlement would not affect the pending unemployment compensation claims filed by plaintiff. Silverman testified that he agreed to the first condition. The alleged agreement meets the other two conditions.
 
 
 7
 Once again, the District Court's finding was based largely on an evaluation of credibility. The underlying facts support the District Court's credibility determination. Silverman had little, if any, motivation to purportedly bind plaintiff to terms plaintiff had not agreed to. If plaintiff is to be believed that he had explicitly told Silverman he would not settle the case for only $15,000, Silverman had nothing to gain--and much to lose--by attempting to bind plaintiff to such a settlement. Under plaintiff's version of the facts, Silverman would have known that plaintiff would repudiate the agreement and possibly seek sanctions against Silverman. Furthermore, the agreement limited Silverman's recovery for work on the case to $5,000, whereas he could have sought much more if he admitted that plaintiff had discharged him. See Defendants' Exhibit 5. On the other hand, plaintiff had a strong incentive to attempt to repudiate the agreement. It is undisputed that two days after the alleged agreement plaintiff was informed that he had won his appeal of the city's denial of his unemployment compensation claim. It was in his interest to include in a settlement of his lawsuit a clause protecting that victory from an appeal by the city. Weaver (plaintiff's attorney in the unemployment compensation matter) testified that he called Silverman with that very purpose in mind.
 
 
 8
 The final issue is whether an agreement was reached between Gantz and Silverman on November 7. Silverman testified that when he agreed to plaintiff's first condition for settling the suit (i.e., the limitation on attorney fees), he also informed plaintiff that he was reasonably sure defendants would accept the other two conditions. Silverman then called Gantz, who allegedly agreed to the settlement as conditioned by plaintiff. The District Court credited Silverman's testimony and found the facts accordingly. (District Court Finding #13).
 
 
 9
 Plaintiff argues that a November 8 letter from Silverman to Gantz, (Defendants' Exhibit 6), shows no agreement had been reached. Silverman and Gantz claim that the letter was merely a memorialization of the oral agreement. The letter is written in the form of a memorialization, and the fact that Gantz never responded to the letter supports defendants' position that it was an accurate recitation of the agreement's terms. Nothing else in the record substantiates plaintiff's assertion that the District Court's findings on this issue are clearly erroneous.
 
 
 10
 For the reasons stated above, we affirm.
 
 
 
 [1]
 Silverman states that he had been authorized by plaintiff to make an offer of $16,000, and that that offer was followed by defendants' counteroffer of $15,000. Plaintiff denies giving such authorization, and also claims--contrary to Silverman's testimony--that he did not authorize, nor was he aware of, Silverman's previous offers, other than one for $100,000